BYRON E. ROBINSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

October 25, 1918.

No. 20,910.

**Negligence of engineer — verdict sustained — damages not excessive.**
    The verdict is sustained by the evidence, and we find no sufficient ground for interfering with the amount awarded as reduced by the trial court.

[1]Reported in 169 N. W. 146.

Action in the district court for Beltrami county to recover $30,000 for personal injuries. The answer alleged contributory negligence on the part of plaintiff and that he assumed the risks and hazards incident to his employment. The case was tried before Stanton, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $17,000. Defendant's motion for judgment nowithstanding the verdict was denied, and its motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $15,000. From the order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*John L. Erdall* and *Marshall A. Spooner,* for appellant.
*Samuel A. Anderson,* for respondent.

TAYLOR, C.

Action for personal injuries. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

The questions presented are whether the evidence is sufficient to sustain the finding of the jury that defendant was negligent, and whether the verdict was so excessive that this court ought to set it aside.

1. The accident occurred at about half past four o'clock in the morning on September 2, 1916, in defendant's yards at Thief River Falls. The night was rather dark and a freight car could be seen and distinguished at a distance of only about three car lengths. Plaintiff was a brakeman on a freight train. The train crew, consisting of the engineer, fireman, another brakeman, known as the swingman, who was in charge of the switching operations, and plaintiff, were engaged in making up their train. The yard consisted of eight level, parallel tracks extending north and south and connecting at each end with a lead track. These tracks were numbered consecutively from 1 to 8 beginning with the most easterly. Each track would hold something more than 60 cars. The distance between tracks measuring from the nearest rails was nine feet.

After switching for a time at the south end of the yard, the crew

took the engine and several cars over track 6 to the north end of the yard. At the beginning of the movement in which the accident occurred, the engine, fronting northerly, stood on the north lead track in the northwesterly part of the yards with three freight cars attached behind it. The movement consisted in "kicking" these three cars down upon track 4, and then in backing the engine down upon track 5 to bring out some cars on that track. Track 5 was between track 4 and track 6 and nearer the engine than track 4. After seeing that the switch at track 4 was lined with the lead track, plaintiff went to the switch at track 5 ready to line that switch with the lead track as soon as the cars had passed it. The engine backed down the lead track, pushing the cars until they had acquired sufficient momentum, when it was uncoupled from them by the swingman and slowed down. As soon as the cars had passed the switch at track 5, plaintiff lined this switch with the lead track, and the engine, apparently without having come to a full stop, passed on down that track. As it passed him plaintiff mounted the rear end of the tender on the engineer's side to watch the track in the direction in which they were going. The swingman, who had ridden the string of cars down to the switch at track 4, and had thrown that switch after the cars had passed it, came over and mounted the engine at the gangway on the engineer's side. Plaintiff testified that when he boarded the tender the engine was moving at the rate of three or four miles per hour; that the speed was soon increased to the rate of about 15 miles per hour; that in such operations the speed should be sufficiently slow so that a stop could be made in the ordinary manner within the distance at which a car could be seen, unless the engineer or the one in charge knew that the track was clear; that he gave a slow down signal which was disregarded; that immediately thereafter a car came in view about three car lengths ahead and he gave an emergency stop signal; that, deeming a collision unavoidable, he stepped from the tender and was carried by his momentum forward and upon track 4; and that before he had regained his equilibrium he was struck by the string of moving cars which had been "kicked" down that track.

Defendant practically concedes that negligence was shown in running at such high speed under the circumstances and in the darkness if plaintiff's version of the occurrence is correct, but contends that this

version is so conclusively shown to be incorrect that no question remained for the jury. The engineer and the swingman contradicted plaintiff flatly, but this merely raised a question of veracity between them and plaintiff which was clearly for the jury. Defendant insists that the fact that the cars "kicked" down track 4 reached the place of the accident at substantially the same time that the engine reached it, demonstrates that the engine could not have moved at the rate claimed. On the other hand, plaintiff insists that the fact that all three cars had passed the switch at track 4 before the swingman threw that switch; that he then stepped over to track 5 and boarded the engine, and that the engine thereafter overtook and passed the string of three cars in going a distance of approximately 600 feet, demonstrates that it must have been run at a high rate of speed. The string of cars passed track 5 at a speed of eight or ten miles per hour which of course was constantly diminishing. Defendant gives the distance from the switch at track 5 to the place of the accident as about 680 feet, and the distance from the switch at track 5 to the switch at track 4 as 62 feet. The length of the string of cars was about 135 feet. How far these cars had passed down track 4 beyond the switch at the time the swingman boarded the engine on track 5 does not appear. The engine was then moving slowly. It increased its speed sufficiently to overtake and pass the string of moving cars before the front end of the forward car had reached the place of the accident, and we cannot say that the facts shown, conclusively demonstrate that it was not run at a rate of speed which was improper and dangerous under the circumstances. The evidence made a question for the jury.

2. The jury returned a verdict for $17,000 which was reduced by the trial court to $15,000. Defendant contends that as reduced it is still excessive.

Plaintiff sustained very serious permanent injuries. The physicians differed as to the nature and extent of these injuries, but we must take the verdict of the jury as a finding that plaintiff's contention in respect to them is true. Without detailing his injuries, it is sufficient to say that the jury could and presumably did find from the evidence that for plaintiff to maintain his body in an erect position for any considerable time without support caused him pain; that he will always require

artificial assistance in walking, and that he will never be able to engage in any occupation which requires him to be upon his feet. He was 25 years of age and in good health prior to the accident. We find no sufficient ground for interfering with the verdict as reduced.

Order affirmed.